IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRATIBHA SINGH,

    Plaintiff,

vs.                                                                             Civ. No. 04-0024 MV/RHS

CLAYNE J. COREY, RANDALL LUND,
AND COREY, LUND & ASSOCIATES
a.k.a. CLAYNE I. COREY, ATTORNEY AT
LAW,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss the Complaint **[Doc. 3]** filed on March 22, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**.

## BACKGROUND

On January 7, 2004, Pratibha Singh ("Plaintiff") filed a Complaint against Clayne J. Corey, Randall Lund, and their firm of Corey, Lund & Associates (collectively "Defendants") for, *inter alia*, breach of contract, negligence, breach of fiduciary duty, fraud, and infliction of emotional distress. Plaintiff has been a resident of the State of New Mexico since October 1999. Defendant Clayne Corey is a resident of Salt Lake City, Utah. He is licensed to practice law in Utah and is not licensed, nor is he doing business in, New Mexico. Defendant Randall Lund currently is incarcerated in the State of Utah and is not a party to Defendant Corey's motion to dismiss.

In November 1998, Plaintiff retained Defendant Corey to represent her in a personal injury lawsuit arising from an automobile accident in the State of Utah that occurred on September 19, 1998. Plaintiff signed a retainer agreement with Defendant Corey on November 3, 1998. At the time, Defendant Corey was a solo practitioner. On May 28, 1999, Defendants Corey and Lund created a limited liability company, Corey & Lund LC,[1] with its principal place of business in Utah. Defendant Corey was the "managing member" of the limited-liability company. At some point in time, Defendant Corey transferred Plaintiff's case to his partner, Defendant Lund. Although Plaintiff did not sign a new retainer agreement, she states that she dealt exclusively with Defendant Lund on the matter. On or about October 12, 1999, Defendant Lund settled Plaintiff's case. Plaintiff alleges that she never received her share of the proceeds from the two-thousand dollar settlement check. In fact, she alleges that her signature on the check was forged. Defendant Corey, on the other hand, alleges that Plaintiff signed a "Release in Full of All Claims and Rights" and endorsed the settlement check in front of his legal assistant.

Plaintiff moved to the State of New Mexico shortly after Defendant Lund settled her case in October 1999. In 2002, Plaintiff attempted to obtain a mortgage in the State of New Mexico. At that time, she discovered that her credit was impaired because of Defendants' failure to pay her medical bills. Plaintiff contacted Defendant Corey in the State of Utah regarding the mortgage application. At some point, Plaintiff alleges that Defendant Corey wrote a letter to Plaintiff's mortgage company representing that Plaintiff's medical bills had been paid and that her credit report had been in error.[2]

---

[1] Defendant Corey states in his affidavit that Corey, Lund & Associates, as named in the Complaint, never existed.

[2] Plaintiff did not attach this letter to her response to Defendant Corey's motion to dismiss.

After this, Plaintiff and Defendant Corey were in further contact regarding the settlement check and payment of Plaintiff's medical bills. Plaintiff and Defendant Corey disagree, however, about the nature of their contact. Plaintiff alleges that the authorized representative of Defendant Corey, Sherill Hilton, initiated calls to her in the State of New Mexico "to cover up the covert and illegal actions of Defendant Lund." Specifically, Plaintiff states that Ms. Hilton contacted her at her residence in Albuquerque by telephone, on several occasions, to explain to her that they were trying to find her file. During one of these phone calls, Ms. Hilton told Plaintiff that the failure to pay the medical bills was a mistake and the credit report was in error. Defendant Corey and his legal assistant, Ms. Hilton, on the other hand, allege that Ms. Hilton "only responded to Plaintiff's telephone call made to her by Plaintiff." They state that neither Ms. Hilton or Defendant Corey initiated contact with Plaintiff when she was in the State of New Mexico.

Corey & Lund LLC dissolved in October 2000, Plaintiff argues to escape liability in the instant case. Defendant Corey denies this, stating that the firm was dissolved "for reasons absolutely unrelated to Plaintiff's case." Defendant Corey states that the firm was dissolved because of Defendant Lund's "dishonesty and criminal activities."

## DISCUSSION

Defendant Corey now moves to dismiss Plaintiff's Complaint on several grounds. First, Defendant Corey argues that this Court does not have personal jurisdiction over him because he never conducted business or committed a tortious act here, nor does he have sufficient "minimum contacts" with the State of New Mexico to justify being brought to court here. Second, Defendant Corey argues that he is not a proper defendant in this case because Defendant Lund

solely handled Plaintiff's case after Defendant Corey transferred it to him. Because Corey & Lund LLC was a limited-liability company, Defendant Corey argues that after the case was transferred, he had no duty to supervise Defendant Lund or the case.

Plaintiff argues that jurisdiction is proper in New Mexico pursuant to its long-arm statute because Defendants committed a tortious act in the State. Plaintiff further argues that Defendant Corey cannot escape liability on the basis that Corey & Lund LLC was a limited-liability company because Defendant Corey was still responsible for Defendant Lund's misdeeds as a "managing member." The Court will address these arguments in turn.

**I.    Personal Jurisdiction**

    **A.    Does this Court have Personal Jurisdiction over Defendant Corey?**

Two requirements must be met for a federal district court to assert personal jurisdiction over a defendant. *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). First, the defendant must be "subject [] to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." *Id.* (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, "the exercise of personal jurisdiction must 'not offend the due process clause of the Fourteenth Amendment.'" *Id.* (citation omitted).

New Mexico applies a three-part test to determine whether personal jurisdiction lies, asking: (1) whether the defendant committed an act or omission specifically set forth in the statute; (2) whether the cause of action arises out of that act or omission; and (3) whether the defendant has sufficient minimum contacts to satisfy due process concerns. *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 132 N.M. 312, 316, 48 P.3d 50, 54 (N.M. 2002). New Mexico's long-arm statute has been interpreted to "extend [] the jurisdictional reach of New

Mexico as far as constitutionally permissible." *Id*.

Since New Mexico has equated its long-arm statute jurisdiction as being coextensive with the requirements of due process, *see F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (N.M. 1994), this Court need only analyze the case under traditional due process law and determine whether maintenance of the suit would offend the due process clause of the Fourteenth Amendment. *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996); *see also Forsythe v. Overmeyer*, 576 F.2d 779, 782 (9th Cir. 1978), *cert denied*, 439 U.S. 864 (1978) (when state courts have construed the state long-arm statute as being coextensive with the requirements of due process, "the usual two-step analysis collapses into a single search for the outer limits of what due process permits").  "The Due Process Clause, by ensuring the 'orderly administration of the laws,'... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Under the Constitution, a defendant must have sufficient minimum contacts with the forum state that allowing the action will not offend traditional concepts of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958) (citation omitted).  It is insufficient if the contacts of the non-resident with the state are random, fortuitous, or isolated.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  Rather, "the defendant's conduct and

connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.,* 444 U.S. at 297.[3]

The minimum contacts analysis must be decided on the particular facts of each case. *See Kuenzle*, 102 F.3d at 456. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See id*. When, as here, a motion to dismiss is presented to the Court on the basis of affidavits and other written materials, Plaintiff need only make a *prima facie* showing of jurisdiction. *Id*. To that end, the Court must resolve all factual disputes in favor of Plaintiff. *Id*.

Even if Plaintiff was able to establish that Defendant Corey committed a tortious act in the State of New Mexico for purposes of the long-arm statute, Plaintiff has not made a *prima facie* showing that Defendants had the requisite minimum contacts with the state in the instant case. In support of her assertion that the Court has personal jurisdiction over Defendant, Plaintiff submitted her own affidavit. She asserts that after moving to the State of New Mexico in October of 2000, she never received her share of the settlement check received on her behalf at Corey & Lund LC. Later, in 2002, when she attempted to obtain a mortgage in New Mexico, she discovered that her credit was impaired because her medical bills had not been paid. She then contacted Defendant Corey regarding this issue. In response, Plaintiff states that Defendant Corey sent Countrywide Mortgage Company a letter and informed them that her credit report was

---

[3] In addition to purposeful availment, a plaintiff may also demonstrate that a party is subject to general jurisdiction if the party's contacts with the forum are sufficiently "'continuous and systematic.'" *Keeton*, 465 U.S. at 779. Plaintiff, however, has not alleged that Defendant Corey maintained any "continuous" or "systematic" contacts with the State of New Mexico. Thus, Plaintiff cannot establish personal jurisdiction over Defendant Corey in this way.

incorrect.[4]  Furthermore, Plaintiff states that Ms. Hilton contacted her at her residence several times.  Plaintiff states during one of these conversations, Ms. Hilton told her that her credit report was in error and her medical bills had been paid.

Plaintiff also submitted several documents in support of her affidavit, including the two-thousand dollar settlement check,[5] the retainer agreement she signed in 1998 with Defendant Corey, and a letter from Defendant Corey to Joseph Camacho, Plaintiff's attorney, dated July 31, 2003.  Plaintiff also submitted an affidavit from Mr. Camacho, who states that he received a letter from Defendant Corey on August 4, 2004.

In support of his motion to dismiss, Defendant Corey submitted two affidavits, one from himself and one from his legal assistant, Sherrill Hilton.  In his affidvait, Defendant Corey asserts that "[a]ll contact with Plaintiff occurred within the State of Utah."  Further, he states that he has never conducted business, nor practiced law, in the State of New Mexico.  In fact, he has never been to the State of New Mexico for any reason.

In Ms. Hilton's affidavit, she asserts that she worked at Corey & Lund from April 1999 until its dissolution in October 2000.  After that, she worked for Defendant Corey until April 2004. After Mr. Lund settled Plaintiff's case, Ms. Hilton states that she personally witnessed Plaintiff execute the "Release of All Claims and Rights" form.  On that same day, Ms. Hilton also witnessed Plaintiff endorse the two-thousand dollar settlement check that accompanied the release form.  More than a year after the case settled, Ms. Hilton states that Plaintiff contacted Defendant

---

[4] Plaintiff did not attach this letter to her response to Defendant Corey's Motion to Dismiss.

[5] Plaintiff states that the signature on the check was forged.  It is impossible, however, for the Court to determine whether or not the signature is Plaintiff's at this stage in the proceedings.

Corey about a default judgment that had been entered against her. Ms. Hilton returned Plaintiff's call and spoke to her about the problem. After that, Ms. Hilton and Defendant Corey did research into the matter and learned that a default judgment had, in fact, been entered.

After learning this, Ms. Hilton contacted Plaintiff and told her that Defendant Corey would be willing to represent her and help her clear up the judgment, but that it would require a new retainer agreement. Plaintiff's husband then called the office and Ms. Hilton informed him of the same thing. Ms. Hilton states that during all of her conversations with Plaintiff, Plaintiff "repeatedly admitted" that the problems were Mr. Lund's fault. Finally, Ms. Hilton states that all contact with Plaintiff by either herself or the office was initiated by Plaintiff: "We did no business, nor entered into any contracts, with Plaintiff while she resided in New Mexico."

Even construing these facts in the light most favorably to Plaintiff, as this Court must, Defendant's does not have the minimum contacts necessary for this Court to assert personal jurisdiction over him. The attorney-client relationship between Plaintiff and Defendant Corey originated in Utah. Defendant Corey is not licensed in, nor is he doing business in, New Mexico. Defendant Corey's contacts with New Mexico are, at most, several phone calls with Plaintiff more than two years after her original case settled, as well as a letter from him to Plaintiff's mortgage company and Plaintiff's attorney. While Plaintiff argues that Defendant Corey's contacts with the State of New Mexico were an "attempt to cover up the covert and illegal actions of the law firm of Corey and Lund," Defendant Corey's affidavit rebuts this proposition.

In sum, Defendant Corey's actions do not demonstrate that he purposefully availed himself "of the privilege of conducting activities" within New Mexico. As the Ninth Circuit has stated, "ordinarily 'use of the mails, telephone, or other...communications simply do not qualify as

purposeful activity invoking the benefits and protections of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (citations omitted), *cert. denied*, 475 U.S. 1122 (1986); *see also Valley Wide Health Servs., Inc. v. Graham*, 106 N.M. 71, 72, 738 P.2d 1316, 1318 (N.M. 1987) (finding that a doctor who returned his patient's telephone call to a telephone number in New Mexico after a doctor-patient relationship had been established in Colorado and after the patient had called the doctor did not "purposefully initiate" activity within New Mexico). As in *Graham*, Defendant Corey simply followed up on Plaintiff's requests for assistance in determining whether her medical bills were paid from the settlement money received at Corey & Lund.  It would offend this Court's notion of fair play and substantial justice to subject Defendant Corey to suit in the State of New Mexico for responding to a former client's inquiries and writing a letter on her behalf to her mortgage company and to her new attorney.

## CONCLUSION

Plaintiff does not allege sufficient "minimum contacts" to allow this Court to exercise jurisdiction over Defendant Corey.  Because the Court does not have personal jurisdiction over Defendant Corey, this Court does not reach the issue of whether Defendant Corey is a proper defendant in this case.  **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss **[Doc. No. 3]** is hereby **GRANTED.**

_____
MARTHA VÁZQUEZ
CHIEF U.S. DISTRICT JUDGE

<u>Attorney for Plaintiff</u>
Joseph Camacho, Esq.

<u>Attorney for Defendants</u>
Clayne Corey, Esq., *pro se*